**STATE of Minnesota, Respondent,**

v.

**Benjamin William CARVER, Appellant.**

**No. CX–84–774.**

Court of Appeals of Minnesota.

March 5, 1985.

Alfred P. Zdrazil, City Atty., Bemidji, for respondent.

Kief, Fuller, Baer, Wallner, Seck, Rodgers, Ltd., Robert M. Wallner, Bemidji, for appellant.

Heard, considered and decided by FOLEY, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellant Benjamin Carver was found guilty of four counts of theft. Minn.Stat. § 609.52, subds. 2(1) and 3(5) (1982 and Supp.1983). Carver contends the trial court committed prejudicial error when it refused to specifically instruct the jury that it could consider evidence of Carver's good character in determining the probability that he committed the acts charged. Carver also contends that the evidence is insufficient to support the guilty verdicts. We affirm.

## FACTS

In October 1983, Carver, manager of the Rite Price gas station in Bemidji, was charged with four counts of misdemeanor theft of $9.00 from four customers by either failing to reset a gas pump to zero before a customer purchased gas, or by not pumping the full amount of gas ordered and paid for by the customer.

A police officer in a mobile home parked about one block from the gas station, by use of a 15–60x spotting telescope, observed the activities at the gas station and the numbers on the gas pumps. He also took several photographs of the scene. The officer admitted his view of the gas station was occasionally blocked by traffic on a highway between the mobile home and the gas station, but that for the four transactions involved he had an unobstructed view.

The officer twice observed a customer purchase $2.00 worth of gas from Carver who then failed to clear the $2.00 sale and reset the pump to zero before he began pumping for two subsequent customers. The officer also saw two other customers pay for gas purchases of $8.00 and $17.00 with single bills of United States currency. Officer Johnson recorded the license numbers of the vehicles and identified the four customers involved, who were called as witnesses for the state.

The two customers who paid with single bills of currency testified that they had ordered $10.00 and $20.00 worth of gas from Carver. Three of the four customers testified that they later questioned the amount of gas that they had received.

Carver testified that, because of the large number of customers at the station, he could not remember three of the four transactions. As to the transaction he remembered, Carver stated the pump did not have $2.00 showing when he began pumping gas. On cross-examination, Carver admitted the pump nozzle could be hung up without shutting off the pump or having to reset the pump to zero. He also testified that reset switches on the pumps had malfunctioned in the past, but that he did not recall any malfunction on that day.

Three character witnesses for Carver, a neighbor, a local minister, and Carver's mother-in-law, testified that, in their opinion, Carver was an honest individual.

Carver requested the trial court submit to the jury Crim. JIG 3.18, "Evidence of Character". The instruction given by the trial court included no specific reference to character evidence, but did include the following language:

> It is your exclusive task to determine the facts in this case, and to consider and weigh the evidence for that purpose. The authority must be exercised with judgment and some discretion and in accordance with the law. You must consider all of the evidence you have heard and seen in this trial, and you must disregard anything you have heard or seen elsewhere about this case.

The court further instructed the jury that:

> You are the exclusive judge of the facts of what has been proven by the evidence and what ultimate facts have been established.

The jury returned a verdict of guilty on all four counts and Carver was sentenced to serve thirty days on each offense to be served concurrently.

## ISSUES

1. Did the trial court commit prejudicial error when it refused to specifically in-

struct the jury that it could consider evidence of Carver's good character in determining the probability that he committed the acts charged?

2. Is there sufficient evidence to support the verdict of guilt?

## ANALYSIS

### I

Originally, Crim. JIG 3.18 recommended that no instruction be given on character evidence. Then *State v. Demmings*, 310 Minn. 152, 246 N.W.2d 31 (1976) came along. Demmings was convicted of simple assault and interfering with police officers in the performance of their duties. The evidence in *Demmings* was conflicting and a number of eyewitnesses for defendant were permitted to testify to defendant's good character and her reputation for being peaceable and nonviolent.

The trial court refused to instruct the jury that it could consider character evidence in determining whether there was a reasonable doubt as to the guilt of the defendant, but did instruct the jury as follows:

> Evidence of good character has been offered in this case. Such evidence relates to the matter of credibility of a witness, and it should be considered along with the other tests used for determining credibility.

*Id.* at 154 n. 2, 246 N.W.2d at 33 n. 2.

On appeal, the Minnesota Supreme Court held that this instruction improperly restricted the jury's use of the character evidence:

> [I]t is error to confine the jury's consideration of the character evidence to the question of the credibility of the defendant as a witness. * * * We believe the trial court, when requested, has an obligation in a case such as this to specifically instruct the jury on the proper use of the character evidence. Unless the trial court does so, there is a danger that the jury will simply reject the evidence as an attempt by defendant to gain sympathy, even though the evidence may be the

defendant's chief means of meeting and rejecting the charge.

> While there may be cases where the evidence of defendant's guilt is so strong that errors of this kind would not require reversal, this is not such a case.

> In reversing, we do not mean to suggest that the trial court on retrial should use the instruction requested by defendant. That instruction would have the effect of overemphasizing the importance of character evidence since it suggests that character evidence by itself may establish a reasonable doubt. A correct instruction would emphasize that the jury should consider the character evidence along with all the other evidence in the case in determining whether they are convinced of defendant's guilt beyond a reasonable doubt. What we said in *State v. Sauer*, [38 Minn. 438, 440, 38 N.W. 355, 356 (1888)], and *State v. Dolliver*, [150 Minn. 155, 184 N.W. 848 (1927)], should provide the trial court with a sufficient basis for preparing such a proper instruction.

*Id.* at 155–56, 246 N.W.2d at 34.

Following the *Demmings* decision, Crim. JIG 3.18 was changed to its present form:

> In this case you have heard evidence as to the character of defendant.

> Such evidence should be considered by the jury with all the other evidence in the case in determining whether the prosecution has proved the defendant's guilt beyond a reasonable doubt. If you are satisfied of his guilt beyond a reasonable doubt, you must find him guilty, notwithstanding such character testimony. On the other hand, if, after considering all the evidence, that of character included, you have a reasonable doubt, you must acquit.

Kane and Cound, 10 *Minnesota Practice*, Crim. JIG 3.18 (Supp.1984).

The language was drawn from *State v. Sauer*, and *State v. Dolliver*. Those two cases, like *Demmings*, reversed convictions where the trial court had given an instruction that limited the jury's use of character

evidence. In *Sauer*, the trial court gave this instruction:

> [G]ood character may have its weight in any case to this extent: that if there is a question of doubt, it may determine the matter in his favor.

38 Minn. at 440, 38 N.W. at 356.

In *Dolliver*, the improper instruction stated:

> The question of good reputation of the defendant is not of itself a sufficient fact from which a reasonable doubt of guilt may arise. Reasonable doubt or guilt must arise from all the testimony in the case.

150 Minn. at 158, 184 N.W. at 849.

Both of these instructions were found to be prejudicial because they tended to minimize the importance of character evidence.

■ The refusal to submit Crim. JIG 3.18 to the jury did not so minimize the importance or limit the jury's use of the character evidence. The trial court instructed the jury to:

> consider all of the evidence that you have heard and seen in this trial.

The instruction also described the elements of each offense, the presumption of innocence, and the requirement of proof beyond a reasonable doubt. The jury was therefore free to consider the character evidence in determining if there was any reasonable doubt that Carver committed the acts charged.

Further, *Demmings* and *Sauer* suggest that where evidence of guilt is strong, an error in a jury instruction on character evidence might not require reversal. Later cases have relied on this language and created an exception to the holding in *Demmings*. *See State v. Posten*, 302 N.W.2d 638, 642 (Minn.1981); *State v. King*, 262 N.W.2d 709, 710 (Minn.1978).

This case fits the exception. The officer's eyewitness testimony was not contradicted but was, in fact, corroborated by each of the victims, three of whom noticed that they had not received the entire amount of gas that they had paid for.

The granting of a new trial in criminal cases is done cautiously, and a conviction will not be reversed for mere technical errors where it appears that the accused has not been prejudiced through the impairment of substantial rights essential to a fair trial.

*State v. Billington*, 241 Minn. 418, 427, 63 N.W.2d 387, 393 (1954).

The refusal of the trial court to give Crim. JIG 3.18 was not prejudicial because the jury was not limited in its use of the character evidence and because the evidence strongly suggested Carver's guilt.

## II

■ The claim of insufficiency of evidence is without merit.

In reviewing a claim of insufficiency of the evidence, we are limited to ascertaining whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged. * * * We cannot retry the facts, but must take the view of the evidence most favorable to the state and must assume that the jury believed the state's witnesses and disbelieved any contradictory evidence. * * * If the jury, giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*State v. Merrill*, 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted).

In addition to the testimony of the police officer and the victims, the jury could well disbelieve Carver's assertion of innocence. Carver had been the manager of the Rite Price gas station for eight years. The only reasonable inference from the record is that Carver used his knowledge about the operation of the gas pumps to commit the intentional acts of theft as charged.

## DECISION

The trial court's failure to give a specific instruction on character evidence did not

prejudice the defendant because the general instruction given did not limit the jury's use of that character evidence and the evidence of guilt was strong. There was sufficient evidence to support the jury's verdicts of guilty.

Affirmed.