## STATE v. JACOB FRIEDSON.[1]

January 21, 1927.

No. 25,824.

**Question for jury whether defendant feloniously received stolen property.**

1. Prosecution for receiving stolen property. The evidence made the question of defendant's guilt a question for the jury.

**Guilty knowledge must be proven beyond a reasonable doubt.**

2. Although guilty knowledge may be shown by circumstantial evidence, it must be proven beyond a reasonable doubt. The charge may have led the jury to think a less degree of certainty sufficient.

**Charge as to weight given to evidence of good character.**

3. The charge unduly minimized the weight to be given to evidence of good character.

**Charge that state's witness was an accomplice assumed defendant's guilt.**

4. The charge without qualification that a witness for the state was an accomplice of the defendant necessarily included an assumption of defendant's guilt.

**Defendant prejudiced by charge to jury.**

5. The charge taken as a whole was prejudicial to defendant.

Criminal Law, 16 C. J. p. 953 n. 13; p. 981 n. 94; p. 1000 n. 98.
Receiving Stolen Goods, 34 Cyc. p. 527 n. 97; p. 530 n. 14.

Defendant appealed from an order of the district court for Hennepin county, Dickinson, J., denying his motion for a new trial. Reversed.

*Brill & Maslon* and *Robert S. Kolliner*, for appellant.

*Clifford L. Hilton*, Attorney General, *Floyd B. Olson*, County Attorney, and *William G. Compton*, Assistant County Attorney, for the state.

[1] Reported in 211 N. W. 958.

TAYLOR, C.

Defendant was convicted of the crime of knowingly and feloniously receiving stolen property, and appeals from an order denying a new trial.

Dave St. Sauver and Lawrence Grow stole 18 tubs of butter from a creamery at Randall, Minnesota, took it to the city of Minneapolis and sold it to Al. Goldstein. They were witnesses for the state and testified to the theft and to the sale to Goldstein. Goldstein was also a witness for the state and testified to the effect that he bought the butter for defendant and placed it in cold storage under a fictitious name at defendant's direction. The evidence, although conflicting so far as it relates to defendant's connection with the matter, was sufficient to make the question of his guilt a question for the jury. As a new trial must be granted on other grounds, we refrain from discussing the evidence further than to say that defendant denied any knowledge of the fact that the butter was stolen, and claimed that Goldstein wanted to sell it to him, that he made a conditional agreement under which he took one tub to see if he could sell it to customers and was not to take the remainder unless he found he could sell it, and that he returned this tub to Goldstein saying he could not handle the butter unless put into prints.

We are of opinion that the charge taken as a whole was prejudicial to defendant. In respect to the proof required to establish guilty knowledge the court, among other things, said:

"It is sufficient if the circumstances are such as to make the accused believe that the goods or property bought or received are stolen. * * * In determining that question in a case of this kind you should take into consideration * * * those things which a person of his intelligence and experience ought to have understood or suspected or put on inquiry as to in relation to the question of whether or not he believed, as in this case, the butter was stolen butter. * * * You will be justified in drawing the conclusion that the defendant himself suspected and believed concerning this matter all that a man of his capacity and his knowledge and his experiences under the circumstances ought to have suspected or believed. What

suspicions it would naturally arouse in a man of his experience and capacity."

Guilty knowledge was one of the essential facts which it was necessary to prove beyond a reasonable doubt in order to convict. The charge given was likely, in the absence of qualifying language, to convey the impression to the jury that it was not necessary to establish that fact with the degree of certainty required by the law.

Evidence had been presented to prove the good character of defendant. Referring to this the court said:

"There has been some testimony as to reputation and character here. This is no defense to crime. The first crime ever committed by one charged with it who is guilty, he had to commence. If he had borne a good reputation before and that was a defense, why he would never be convicted. Character, however, is some substantive proof that a person—if it is of a good character is some substantive proof to be weighed by the jury in his behalf as to whether or not a person of such character and reputation would be more or less likely to commit an offense such as charged against him. It may be weighed as evidence in his favor."

We have had occasion in recent cases to consider instructions concerning the weight to be given to character evidence. State v. Dolliver, 150 Minn. 155, 184 N. W. 848; State v. Dolliver, 154 Minn. 297, 191 N. W. 594; State v. Nelson, 166 Minn. 371, 208 N. W. 129; State v. Tuomi, 167 Minn. 74, 208 N. W. 528. The question is fully considered and the rule stated in those cases and need not be here repeated. The instruction as given tended unduly to minimize the effect to be given to such evidence.

The court further said:

"Goldstein is an accomplice, and his testimony as to Friedson's connection with the matter of disposing of the butter—his testimony must, if it stood alone, be corroborated."

The court then read the statute requiring the testimony of an accomplice to be corroborated in order to justify a conviction, and also the statute which provides that a person who aids and abets

in the commission of a crime or procures another to commit it shall be deemed a principal, and then continued:

"It is conceded that Goldstein was guilty of receiving the property, the butter, to the extent of 18 tubs, in this case. Any participation, and aid or abetting of his crime, if he committed one, makes such a party a principal if he was chargeable with guilty knowledge as to the stolen character of the goods. In addition to the receipt of the goods by Goldstein you have heard the testimony as to what portion of it was actually received or handled by Friedson, and if he took that property at any time, received possession of any part of it with guilty knowledge that I have defined to you, no attempt on his part to run away from his act afterwards would be any excuse or palliation whatever so far as your duty is concerned in this case."

The court told the jury, without qualification, that "Goldstein is an accomplice." Stating that he was an accomplice necessarily implied the existence of a principal, and the jury would naturally understand from the entire statement that Friedson was that principal. Such a statement in a charge, made without qualification, oversteps the line bounding the province of the court, as it necessarily includes an assumption of the guilt of the alleged principal. State v. Lawlor, 28 Minn. 216, 9 N. W. 698; State v. Price, 135 Minn. 159, 160 N. W. 677; Heivner v. People, 7 Colo. App. 458, 43 Pac. 1047; State v. Sloan, 35 Mont. 367, 89 Pac. 829; State v. Allen, 34 Mont. 403, 87 Pac. 177; State v. Potts, 239 Mo. 403, 144 S. W. 495; Bell v. State, 39 Tex. Cr. 677, 47 S. W. 1010; Com. v. Glover, 111 Mass. 395.

The charge was argumentative in its nature and taken as a whole was prejudicial to the defendant.

Order reversed and a new trial granted.